UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERIKA JOHNSON,<br><br>          Plaintiff,<br><br>    -against-<br><br>THE CITY OF NEW YORK; NEW YORK CITY POLICE OFFICERS DANNY RODRIGUEZ, GEORGE ROWEN, MAXIM PAUL AND NEW YORK CITY POLICE OFFICER 26242 in their individual capacity;<br><br>          Defendants. | No.<br><br>**COMPLAINT**<br>**JURY TRIAL DEMAND** |

Plaintiff Sherika Johnson, by and through her attorney, Xavier R. Donaldson for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. The evening of October 1, 2021 started like many others for Sherika Johnsons: she woke up early, conducted her normal daily activities, and began to drive into lower Manhattan from Brooklyn en route to a recording studio in New Jersey. She had no idea that, just some minutes later, she would be staring down the barrel of a reckless police officer's firearm—likely due to the mere fact that she was an African-American woman driving a luxury vehicle from Brooklyn into Manhattan.

2. Ms. Johnson had no mechanical problems with her 2020 BMW vehicle while she was driving across the Brooklyn Bridge and did not commit any violations of any New York Vehicle and Traffic Laws.

1

3.      As Ms. Johnson drove across the Brooklyn Bridge, she remained in the left lane while crossing the bridge and at no time exceeding the speed limit.  As Ms. Johnson approached the exit into Manhattan and now on the Manhattan side of the Brooklyn Bridge, she was approached by members of the New York City Police Department with their firearms drawn.

4.      As members of the New York Police Department approached, Ms. Johnson from her peripheral, saw movement from her righthand side. Ms. Johnson then saw several police officers approaching her on foot with their firearms pointed towards her or her car. She then immediately stopped her vehicle for fear of being shot dead on the Brooklyn Bridge. During Ms. Johnson's stop, she was crying hysterically and literally thought she was going to die at the hands of the New York City Police Department.

5.      Once Ms. Johnson's car came to a stop, Defendant Officer Rowan of the New York City Police Department, approached the passenger's side window while screaming and pointing his firearm directly towards her face. Ms. Johnson immediately put both of her hands up, palms out and facing the steering wheel. Ms. Johnson was concerned that she was going to be shot.

6.      Defendant Officer Rowan then ran to the driver's side of Ms. Johnson's vehicle and while still screaming, placed his firearm within inches of Ms. Johnson's face. Ms. Johnson still had her hands up and facing her steering wheel.

7.      Ms. Johnson could literally see the barrel of the officer's firearm within inches of her face and while in sheer fear of her life and shaking, she turned off the car.

8.      While Ms. Johnson was on the Brooklyn Bridge, and based upon the conduct of the New York City Police Department, she believed that she was going to die because

2

Officer Rowan was pointing a loaded firearm within inches of her face while screaming and illustrating a frightening intensity on his face.

9.      Ms. Johnson kept her hands in the air with her seatbelt attached while Officer Rowan continued screaming at her and pointing his firearm toward her face.

10.     At some point, while the firearm was inside of the driver's side window, Officer Rowan opened the driver's side door and placed part of his body inside the car, while his firearm was still pointing at her and still yelling. One move and she believed she would have been dead.

11.     For what seemed like an eternity, Ms. Johnson sat in her car helpless as Officer Rowan pointed a loaded firearm directly into her face.

12.     Other officers were still around her vehicle with their firearms drawn and pointed either at her or at her car.

13.     After what felt like hours on the Brooklyn Bridge with several New York City Police Officers surrounding her vehicle, Ms. Johnson was ordered to drive the vehicle to the nearest location within Manhattan and park the vehicle. New York City Police Officers followed her into downtown Manhattan.

14.     After an extended period of time in downtown Manhattan near the Brooklyn Bridge, officers told her that she could leave.

15.     As a result of this extremely violent interaction, Ms. Johnson is afraid to even look at police officer after this violent interaction.

16.     Ms. Johnson's situation resembled many needless escalations of traffic stops into life-threatening situations for many African-Americans, often with tragic

consequences. But for Ms. Johnson's lack of movement, may well have joined the ranks of Philando Castile or Samuel DuBose as a black life cut short at a traffic stop.

## THE PARTIES

17.    Plaintiff Sherika Johnson is a citizen of the United States and at all relevant times was a resident of Brooklyn, New York.

18.    Defendant New York City Police Department ("NYPD") Officer Rowan and Police Officer Shield number 26242 was, at all times relevant to this Complaint, police officers employed by the City of New York. In this role, Officers Rowan and Shield number 26242 were duly appointed and acting officers, servants, employees and/or agents of the City of New York. At all relevant times, they were acting in the scope of their employment and under color of state law.

19.    Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York.  At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel, including Officer Rowan and Officer Shield number 26242, obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

20.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

21.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

4

22.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

23.     Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

*Officer Rowan and other NYPD Officers Place Ms. Johnson in Imminent Fear of Her Life*

24.     On the morning October 1, 2021, Plaintiff Sherika Johnson was driving across the Brooklyn Bridge from her Brooklyn home into Manhattan en route to New Jersey for a studio session inside of New Jersey Recording studio.

25.     Ms. Johnson, a mall framed African-American woman, is employed in the Accounting field. On the day in question, she was the lease owner and operator of a 2020 BMW.

26.     While driving on the Brooklyn Bridge, Ms. Johnson never exceeded the posted speed limit.

27.     As she drove on the Brooklyn Bridge towards the Manhattan side of the Bridge, Ms. Johnson began driving in the left lane toward the Manhattan exit.

28.     As Ms. Johnson was driving her vehicle, she observed several officers running towards her vehicle from the rear with their firearms drawn.

29.     Observing New York City Police Officers running towards her car with their firearms drawn, Ms. Johnson brought her vehicle to a stop.

30.     An Officer then appeared on Ms. Johnson's passenger side of her vehicle with his firearm pointing inside of the passenger window while screaming at Ms. Johnson. Ms. Johnson was clearly unarmed, had her hands up and no one else was inside of the vehicle.

31.     The New York City Police Officers and other officers clearly knew Ms.

Johnson was alone and unarmed after they approached her passenger side window with their firearms drawn.

32.    Ms. Johnson had never had a firearm pointed in her face prior to this evening.

33.    Officer Rowan and others officers should have known after they followed her vehicle on foot and after she stopped the vehicle that they did not have to draw their firearms or point their firearms at her face while she sat in her vehicle.

34.    Just seconds later, one of the officers inexplicably escalated the already horrifying situation by running to the driver's side of Ms. Johnson's vehicle and pointing his firearm inside of Ms. Johnson's driver's side vehicle through the window. Again, Ms. Johnson's hands were up and completely within the officer's eyesight.

35.    One of the Officer's then, while pointing the firearm directly at and within inches of Ms. Johnson's face, opened the driver's side door while placing his body inside of her door.

36.    While the Officer was pointing his firearm directly at and within inches of Ms. Johnson's face, the Officer was continually screaming at Ms. Johnson making an already disturbing interaction extremely more frightful, chaotic and possibly deadly causing her to cry hysterically. One wrong head turn, one wrong hand movement, one loud scream and Ms. Johnson would be dead for being African American and driving the wrong type of car.

37.    Upon information and belief, the Officer's weapon was fully loaded and operational.

38.    Ms. Johnson, separated from the barrel of the Officer's gun by little more than inches, feared for her life.

6

39. In an attempt to defuse the situation, Ms. Johnson kept her hands up and towards the steering wheel, showing the Officer that her hands were empty.

40. The Officer, increasingly erratic, nervous and apparently angry continually screamed at Ms. Johnson. At all relevant times, he kept his gun trained on Ms. Johnson's face.

41. Several other officers approached Ms. Johnson's vehicle, many pointing their firearms at Ms. Johnson's vehicle, while she sat inside of it on the Brooklyn Bridge.

42. Ms. Johnson was, after several minutes, told to pull off of the Brooklyn Bridge into lower Manhattan and followed by other officers to that area.

43. At some point, either on the Bridge or while she parked in a downtown area of Manhattan, an officer told Ms. Johnson that the treatment by the Officers towards her was inappropriate.

44. While stopped by Officers, Ms. Johnson called her friend and was still in shock and crying hysterically.

45. Ms. Johnson was not given a ticket, a summons, or any other notice indicating that she had done *anything wrong*.

46. The only thing Ms. Johnson did was drive a luxury vehicle while being an African American woman.

47. ***Ms. Johnson, Despite Being Traumatized, Continued to the Recording Studio***

48. With the ordeal finally over, Ms. Johnson drove to the recording studio and attempted to record music.

49. Ms. Johnson, due to the traumatic, almost deadly interaction she had just endured was unable to record a song and thus likely missed out on an opportunity to make that one (1) great song that could have propelled her career to astronomical heights.

50.     Ms. Johnson did ultimately file a complaint with the Civilian Complaint Review Board ("CCRB"). She gave a statement to CCRB investigators, who advised her that they would keep her apprised of the status of the case.

51.     Ms. Johnson filed a notice of claim on the City of New York.

52.     Ms. Johnson continues to suffer extreme anxiety and depression as a result of this encounter; she fears that, simply by being an African-American woman driving a luxury car, she may be shot by an overeager, overzealous, extremely hyper police officer. As of the filing of this complaint, Ms. Johnson still fears any contact with police officers and gets "jittery" when she sees one or sees/hears police sirens.

53.     Ms. Johnson now brings this action to hold the City of New York and the New York City Police Department accountable for the misconduct of its officers as well as several individual New York City Police Officers.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Substantive Due Process/Excessive Force
(Against Defendant Officer Rowan; Officer Shield Number ---- and other New York City Police Officers)

54.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

55.     At all relevant times, Officers Danny Rodriguez, George Rowen and Maxim Paul were acting under color of state law in their individual and official capacities within the scope of their employment as police officers for the New York City Police Department.

56.     At all relevant times, Plaintiff did not illustrate any security or safety risk that would have justified the use of a weapon in effecting a traffic stop of Plaintiff.

57.     Plaintiff did not pose an immediate threat to the safety of Officers Danny

Rodriguez, George Rowen and Maxim Paul Rowan or others.

58.    Plaintiff was at all times unarmed.

59.    When Officers saw Plaintiff through the passenger window, they saw she was alone and unarmed.

60.    By nonetheless drawing their guns and pointing it at Plaintiff for a sustained period of several minutes while screaming at her on the Brooklyn Bridge, Officers Danny Rodriguez, George Rowen and Maxim Paul engaged in unlawful, outrageous, dangerous and conscience-shocking conduct.

61.    By drawing their firearms and pointing it at Plaintiff for a sustained period of time, Officers Danny Rodriguez, George Rowen and Maxim Paul and others used excessive, brutal, sadistic and unconscionable force on Plaintiff.

62.    Officers Danny Rodriguez, George Rowen and Maxim Paul clearly acted beyond the scope of their authority and jurisdiction by willfully, knowingly, and intentionally depriving Plaintiff of her constitutional rights guaranteed by the Fourth and Fourteenth Amendments. Officers Danny Rodriguez, George Rowen and Maxim Paul, and others, brandishing their weapons was a wanton and gratuitous threat of deadly force that was vastly out of proportion to any danger Plaintiff could have posed.

63.    As a direct and proximate result of Officers Danny Rodriguez, George Rowen and Maxim Paul and other's misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Negligent Hiring, Retention, Training and Supervision
(All Defendants)

64.    The Plaintiff repeats, reiterates  and realleges  each and every allegation

9

contained in paragraphs marked 1 through 63 with the same force and effect as if more fully set forth at length herein.

65.    The City of New York and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise the defendants, individuals who were unfit for the performance of police duties on October 1, 2021 at the aforementioned location.

66.    As a direct and proximate result of Officers Danny Rodriguez, George Rowen and Maxim Paul and other's misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

*       *       *

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages against Officer Rowan and others in an amount to be determined at trial;

c.  Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
      December 13, 2024

                                 XAVIER R. DONALDSON

                             By: ***Xavier R. Donaldson***

                                 Xavier R. Donaldson

                                 136 Madison Avenue,
                                 6th Floor
                                 New York, New York 10016
                                 (646) 772-3334

                                 *Attorney for Plaintiff Sherika Johnson*

11